## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**TOREE SIMS,**                                                                 **Petitioner**

**v.**                                                            **Case No. 3:05-cr-121-CRS-CHL**
                                                                 **Case No. 3:14-cv-316-CRS-CHL**

**UNITED STATES OF AMERICA,**                                       **Respondent**

### Findings of Fact, Conclusions of Law, and Recommendation

### Introduction

The primary motion before the Court is Toree Sims's motion to vacate his conviction under 28 U.S.C. § 2255.  DN 428.

The Court referred this matter to the undersigned for findings of fact, conclusions of law, and recommendations for disposition.  DNs 433 & 461.

The undersigned recommends that the Court **DENY** Sims's motion to vacate.

### Findings of Fact

For clarity, the Court cites to the document number and Page ID#.

### I.      Background

The court of appeals described the background in this matter as follows:

> Detroit Drug Enforcement Agency ("DEA") agents began investigating a group known as the Black Mafia Family in November 2003.  In May 2004, a judge authorized the DEA to intercept phone calls to and from Terry Flenory, who was believed to be the head of the Black Mafia Family.  Agents intercepted multiple calls concerning the sale and distribution of cocaine between Flenory and a man suspected to be Sims.  On June 17, 2004, a driver for the organization was stopped by police on his way to Louisville.  During a search of the vehicle, the police recovered ten kilograms of cocaine and a cell phone with a record of a recent call to "Qiana Toree."  The phone number listed for ["Qiana Toree"] was the same number used by the man believed to be Sims whose calls with Flenory had been intercepted by the DEA.  The Detroit DEA notified the Louisville DEA about both the calls and the stop, and, as a result, Louisville DEA agents applied

1

for court authority for a wiretap of the cell phone Sims used in the calls with Flenory.

The June 28, 2004, affidavit for the wiretap detailed the Detroit investigation and how that investigation had intercepted Sims's conversations with Flenory. It also discussed how a confidential source, SOI-9, told DEA agents he had bought cocaine from Sims in late 2003. A judge in the Western District of Kentucky issued an order authorizing the tap, and on July 30, this same judge ordered the tap to be extended an additional thirty days. Numerous calls concerning the sale and distribution of cocaine were intercepted, leading to a search of the home of Karen Johnson, Sims's girlfriend, where scales and drug ledgers were found, along with Black Mafia insignia. A grand jury indicted Sims on violations of 21 U.S.C. §§ 846 and 841(a)(1). Sims moved to suppress the evidence gathered with the wiretap and to compel the government to provide him with an unredacted copy of a wiretap affidavit from a different case. Both motions were denied, and following a jury trial, Sims was convicted. Sims timely appealed the denial of these motions.

*United States v. Sims*, 508 F.App'x 452, 455 (6th Cir. 2012) (brackets added). Before trial, the

United States filed a notice of its intent to seek an enhanced sentence for Sims under 21 U.S.C.

§ 841(b)(1) & 851 for his prior felony drug conviction. DN 307.

At sentencing, the Court found that Sims's criminal history was a category III and his

offense level was 40. Sent'g Tr. 43. The Court sentenced Sims to 360 months, at the lowest end

of the then-applicable guideline range. *Id.*

On appeal, Sims alleged:

four errors in the district court's denial of his motion to suppress the wiretap: (1) the June 28 affidavit in support of the wiretap made an insufficient showing of necessity; (2) inconsistencies in this affidavit merited an evidentiary hearing; (3) this affidavit failed to establish probable cause; and (4) the July 30 affidavit in support of the extension of the wiretap failed to establish probable cause.

508 F.App'x at 456.

The Court of Appeals found no clear error in the district court's finding of necessity;

denial of Sims's request for an evidentiary hearing; in finding that probable cause existed for the

initial wiretap; and in finding that probable cause existed for extending the wiretap. *Id.* at 457 –

60. The Court of Appeals also found no abuse of discretion in the district court's refusal to enter

an order compelling the government to provide an unredacted affidavit submitted in a different criminal matter.  *Id.* at 460 – 61.

## II.     Post-conviction procedural history

On April 14, 2014, Sims filed this motion to vacate.  DN 428.  He has made numerous other filings since then.  Notably, he successfully moved for a sentence reduction.  *See* DN 466. On February 11, 2015, the Court reduced Sims's sentence from 360 months to 292 months.  *Id.*

In a May 13, 2015 memorandum opinion, the undersigned detailed the lengthy post-conviction procedural history in this case.  DN 470 at 2767 – 68.  The undersigned will not repeat that lengthy procedural history here.  The following motions are ripe for review:

- o   DN 428: Sims's motion to vacate his conviction under 28 U.S.C. § 2255;

- o   DN 470: Sims's additional ground for relief;

- o   DN 473: Sims's motion for appointed counsel (styled as a "response" to the Court's order granting the motion to amend);

- o   DN 475: Sims's motion to amend his motion to vacate to add a claim under *Johnson v. United States*, 135 S.Ct. 2551 (2015);

- o   DN 477: Sims's motion to amend his motion to vacate to add a claim under *Elonis v. United States*, 136 S.Ct. 2001 (2015);

- o   DN 479: Sims's motion for extension of time (styled as a "request for admission");

- o   DN 480: government's first motion to strike;

- o   DN 481: Sims's reply in support of his motion for extension of time (styled as "counterclaim and crossclaim");

- o   DN 482: government's second motion to strike; and

- o   DN 483: Sims's response to government's second motion to strike.

**Conclusions of Law as to Sims's motion to vacate (DNs 428, 431, & 470)**

## I.     Standard of Review

### A.  Applicable statutes

3

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States," may move the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). If the sentencing court finds "that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," the sentencing court shall vacate or set aside the judgment. 28 U.S.C. § 2255(b). A one-year statute of limitations applies for a federal prisoner's motion to vacate. 28 U.S.C. § 2255(f).

### B. Ineffective assistance of trial counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient. *Id.* at 687. The deficient performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

 "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. To fairly assess counsel's performance, the Court must make every effort:

> to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The defendant must also show that the deficient performance prejudiced the defense. *Id.* The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id.* "In the context of pleas a

4

defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012).   A court deciding an ineffective assistance of counsel claim does not need to "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### C.  Ineffective assistance of appellate counsel

The right to effective assistance of counsel extends to a defendant's first appeal. *Evitts v. Lucey*, 469 U.S. 387, 388 – 89 (1985).   To prevail on an ineffective assistance of appellate counsel claim, the defendant must show deficient performance and prejudice. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009).   The defendant "must show that counsel's representation fell below an objective standard of reasonableness, and that his deficiencies prejudiced the defendant." *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004).   "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).   "With respect to prejudice in the context of ineffective assistance of appellate counsel, a defendant must show a reasonable probability that, but for his counsel's defective performance, he would have prevailed on appeal." *Mapes*, 388 F.3d at 194.

### II.      Sims's motion to vacate (DNs 428, 431, & 470)

### A.  Ground one: ineffective assistance of trial counsel
for failing to investigate prior testimony and other affidavits

#### 1.  Failure to investigate prior testimony

Ground one of Sims's motion alleges that his trial counsel was constitutionally ineffective for failing to investigate other proceedings in which witnesses Arnold Boyd and

Charles Parson[1] testified.  DN 428 at 2246.  Sims alleges that had his trial counsel, Armand Judah, properly investigated Boyd and Parson's testimony at other proceedings, it would have led to Sims's acquittal.  *Id.*  He also alleges that had Judah properly investigated their prior testimony, it would have shown that the prosecutor committed misconduct when she referred to Sims as a member of the Black Mafia Family.  DN 431 at 2491 – 95.

The government argues that Sims cannot prove either prong of the *Strickland* ineffective assistance of counsel standard for this failure to investigate claim.  As to the first prong, the government argues that Judah's performance in investigating Boyd and Parson's other testimony was not deficient because he introduced evidence of their prior trial testimony.  DN 446 at 2531.

As evidence for his claim that Judah did not investigate, Sims points to Judah's cross-examination of Boyd and Parson.  DN 431 at 2490.  Sims appears to argue that because Judah asked Boyd and Parson on cross-examination if they had testified in prior trials, Judah did not know whether they had testified in prior trials.  *See id.* at 2489 – 90.

In response to Sims's allegations, the United States attached the affidavit of Sims's trial counsel, Armand Judah, and his co-counsel, Matthew Farra.  DNs 485-1 & 485-2.  Farra adopted Judah's statements as his own.  DN 485-2 at ¶¶ 2 – 3.

Judah's affidavit says:

> The affiant was aware of prior testimony of witnesses, and the United States had provided proffers and information as to these witness' testimony prior to Movant's trial.  The Affiant was well aware that the co-conspirators had testified in other trials, as is clear from the transcript portions cited on page 21 of Movant's Motion to Vacate.  The Movant is apparently taking the questions asked to Mr. Boyd and Mr. Parsons as evidence that this was the first that the Affiant had heard of their prior testimony.  Contrary to Movant's assertion, it is clear that Affiant was well aware that these co-conspirators had testified in other trials, and that the

---

[1] Sims occasionally refers to Charles Parson as Parsons.  *See, e.g.*, DN 431 at 2490.  On cross-examination, Sims's attorney Armand Judah referred to him as Parsons.  *See, e.g.*, DN 397 at 1645.  Parson testified that he spells his last name Parson.  DN 397 at 1624.

> Affiant was introducing this fact before the jury in Movant's trial.  The Affiant
> was also aware of Boyd and [Parson's] reduced sentence for cooperating with the
> government.

DN 485-1 at 2866 (brackets added).

Beyond this affidavit, Judah's cross-examinations of both Boyd and Parson at trial make clear that he did know about their prior testimony and that he questioned them about their prior testimony to show the jury that they had cooperated with the government pursuant to a plea agreement.  Judah's cross-examination of Boyd illustrates this point:

> Judah Q: And – because you're quite articulate in this courtroom today.
> You've given this same testimony before, maybe not about Mr. Sims, but other
> individuals?
>
> Boyd A: Yes, sir.
>
> Judah Q: And in the course of this, just so we're clear – Mr. Boyd, just so
> we're clear for the jury, actually, in looking at your plea agreement, if you
> continue to cooperate and help the government, you will be receiving a sentence
> you hope – and I understand you hope – of 49 to 61 months; correct?
>
> Boyd A: Yes.
>
> Judah Q: And that is you were looking at something substantially greater
> than that, were you not?
>
> Boyd A: Yes, sir.

DN 396 at 1592 – 93.  Similarly, Judah's cross-examination of Parson illustrates that Parson served a total of sixteen months, instead of the ten-year mandatory minimum, in exchange for his cooperation with the government.  *See* DN 397 at 1646.

The undersigned concludes that Sims has not shown that Judah provided deficient performance for his claim that Judah failed to investigate the prior testimony of Boyd and Parson.  Accordingly, the undersigned need not determine whether Judah's performance related to the investigation of prior testimony prejudiced Sims in that he did not receive an acquittal.  *See Strickland*, 466 U.S. at 697.  In particular, the undersigned need not discuss whether it

7

prejudiced Sims when Judah failed to object to alleged prosecutorial misconduct for referring to Sims's alleged membership in the Black Mafia Family, because this aspect of Sims's claim is predicated on Judah's alleged failure to investigate the previous testimony of Boyd and Parson. *See id.*

### 2.  Failure to investigate affidavits

Sims also alleges that Judah failed to investigate the two affidavits in support of wiretap applications by FBI Special Agent Scott Wenther and DEA Special Agent Brian Bester.  DN 431 at 2498 – 99.  Sims attached excerpts from both affidavits in support of his motion to vacate.  *See* DN 431-1 at 2376 – 80 & 2381 – 85.  Both Agent Wenther and Agent Bester's affidavits said that Parson's cocaine shipment was headed to Atlanta.  DN 431-1 at 2384 & 2378.  Sims alleges that if Judah had properly investigated these affidavits, he could have impeached the testimony of Parson, Boyd, and DEA Special Agent Jeff Dunn who all testified at trial that the shipment of cocaine was going to Louisville.  DN 431 at 2500.

The government argues that Judah's performance in investigating Agent Wenther and Agent Bester's affidavits was not deficient because Judah introduced evidence in support of the defense's theory that the shipment was going to Atlanta.  DN 446 at 2532.  The government argues, "At trial, Judah would not have been permitted to use those affidavits to impeach anyone but Wenther and Bester.  *Id.* (citing Fed. R. Evid. 801).[2]

---

[2] The Court assumes that this citation is an error.  Rule 801(d) excludes a declarant-witness's prior inconsistent statement from the hearsay definition.  Fed. R. Evid. 801(d).  The rule permits the *substantive* introduction of some statements, not just for impeachment purposes.  Rule 801(d) says:

> (1) **A Declarant-Witness's Prior Statement**.    The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
> (A)     is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing or other proceeding or in a deposition.

On direct examination, Parson testified that he was pulled over on his way to Louisville. DN 397 at 1638.  Agent Dunn also testified that the shipment was going to Louisville.  DN 396 at 1536.  On cross-examination, Judah attempted to use Agent Dunn's statement to impeach Parson on where he was going when he was pulled over.  DN 397 at 1651 – 52.   The Court did not allow Judah to use Agent Dunn's statement to impeach Parson.  DN 397 at 1652 ("But I don't see any purpose in using Dunn's statement to try and impeach this witness.  This witness has said what he said.").

Federal Rule of Evidence 613 governs impeachment by prior inconsistent statement. Rule 613 makes clear that an attorney can only impeach a witness "about the witness's prior statement."  Fed. R. Evid. 613(a).[3]  The Advisory Committee's note makes clear that an attorney can only impeach a witness about the witness's "own prior statement."   Fed. R. Evid. 613 advisory committee's note.  Just as the Court did not allow Judah to use Agent Dunn's statement to impeach Parson, he also would not have been allowed to use Agent Bester and Agent Wenther's affidavits to impeach Parson or Boyd.

The undersigned concludes that Sims has not shown that Judah provided deficient performance for his claim that Judah failed to investigate Agent Bester and Agent Wenther's affidavits.  Accordingly, the undersigned need not determine whether Judah's performance related to the affidavits prejudiced Sims.  *See Strickland*, 466 U.S. at 697.

The undersigned recommends that the Court deny Sims's claim of ineffective assistance of counsel raised in ground one.

---

Fed. R. Evid. 801(d)(1)(A).

[3] Federal Rule of Evidence 613(a) says:

(a)    **Showing or Disclosing the Statement During Examination**.  When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness.  But the party must, on request, show it or disclose its contents to an adverse party's attorney.

9

**B.  Ground two: ineffective assistance of trial counsel**
**for advising Sims that any plea would require cooperation with the government**

Ground two of Sims's motion alleges that his trial counsel was constitutionally ineffective for advising him that a guilty plea would involve cooperating with the government and testifying at trials.  DN 445 at 2521.  "Based on this advice Sims abandoned any further considerations about pleading guilty."  *Id.*  Sims included the following affidavit in support of this assertion:

> I, Toree Sims, swear under the penalty of perjury – [18 U.S.C. §§ 1621 & 1746] – that during discussions concerning pleading guilty no attorney advised me of the option to open plea to the court.  Specifically, my attorney, Armand Judah told me if I wish to plead guilty I will be required to cooperate with the Government.  This information caused me to forego pursuing a guilty plea and I proceeded to trial.

DN 431 at 2505 – 06 (brackets added).  Sims goes on to allege that his trial counsel was constitutionally ineffective for failing to advise him that he could plead guilty in open court without a plea bargain.  DN 445 at 2521.

In response to Sims's allegations, the government points to Judah and Farra's affidavits.  DN 446 at 2533 – 36.

Judah's affidavit contradicts Sims's affidavit in two ways.  First, as to Sims's contention that his attorney did not discuss the option of an open plea, Judah says, "All types of pleas were discussed and explored with the Movant."  DN 485-1 at ¶ 29.  Further, Judah "advised the Movant that any plea, other than a plea agreement with cooperation, would mandate a 20-year sentence, which was double that of a plea agreement with cooperation."  *Id.*

Second, Judah's affidavit contradicts Sims's assertion that he abandoned any consideration of pleading guilty because Judah advised him that a guilty plea would involve cooperating and testifying, if necessary.  Judah says that in their first meeting, and in every

meeting after that, Sims "made it absolutely clear that he would not settle the case." *Id.* ¶ 9. According to Judah, Sims "made it clear that he had no interest in any plea, period. The Movant stated many times over that he wanted his day in court." *Id.* ¶ 16. Judah's affidavit concludes, "The statements contained in Movant's Motion to vacate are completely contrary to his standpoint throughout the case, where he insisted on a trial and refused any offer to plead guilty." *Id.* ¶ 31.

In addition to Judah's affidavit, the government also attached a written offer on a guilty plea from prosecutor Laura Hall to Thomas Atkins, Sim's counsel before Judah. That letter says, "Of course, Mr. Sims does not have to cooperate as a part of a plea of guilty. However, without doing so, the United States will only have the option of recommending at a term of imprisonment no lower than the enhanced mandatory minimum sentence of twenty (20) years." DN 485-1. Judah says that he conveyed this offer to Sims and was successful in convincing the United States to keep the offer open if Sims changed his mind. DN 485-1 at ¶¶ 22 – 23.

The government argues that Sims cannot prove either prong of the *Strickland* ineffective assistance of counsel standard. As to the first prong, the government argues that Judah's performance was not deficient because he discussed with Sims all of the possibilities for pleading guilty. DN 446 at 2534. As to the second prong, the government argues that Sims cannot prove prejudice because he cannot show that he would have received a different sentence if he had entered an open plea. *Id.* at 2535 – 36.

Judah's affidavit explicitly says that he discussed "all types of pleas" with Sims. DN 485-1 at ¶ 29. Farra, who served as Judah's co-counsel during trial, adopted each of the statements in Judah's affidavit as his own. DN 485-2 at ¶¶ 2 – 3. Although Sims disputes that Sims discussed "all pleas with him," Judah and Farra's affidavits provide strong evidence that

Judah did advise Sims of the possibility that he could plead guilty in open court without cooperating or testifying.

Even assuming that Judah did not advise Sims about an open plea, Sims has not shown that "the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384. If Sims had entered a plea in open court, the Court *could have* reduced his guideline range for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. However, a guilty plea alone does not *entitle* a defendant to the acceptance of responsibility credit. *United States v. Kathman*, 490 F.3d 520, 524 (6th Cir. 2007); *United States v. Tucker*, 925 F.2d 990, 993 (6th Cir. 1991) ("The Sentencing Guidelines expressly provide that simply entering a guilty plea will not entitle a defendant to a section 3E.1.1 reduction.").

Additionally, even if Sims had entered an open plea, and the Court had applied a reduction for acceptance of responsibility, he still could have received the same 360-month sentence the Court imposed. With a reduced offense level of 38 and a criminal history at a category III, his resulting guideline range would have been 292 – 365 months. *See* U.S.S.G. Ch. 5 pt. A. The 360-month sentence he received still falls within that range. *See* DN 400 (imposing a 360-month sentence).

What Sims asks the Court to believe now—that Sims would have entered a guilty plea and admitted his guilt—is a stretch too far. At his sentencing, Sims continued to maintain his innocence. *See, e.g.*, DN 400 at 10 ("I'm also stating that I never was a part of BMF, the Black Mafia Family."). In his briefs now, he continues to maintain his innocence. *See, e.g.*, DN 431 at 2497 (noting that he "has always maintained his innocence").

Sims has not argued that his attorney did not advise him of the right to maintain his innocence and plead guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). Even if he

had entered an *Alford* plea, the Court would not have been required to credit Sims with a reduction for acceptance of responsibility. *Tucker*, 925 F.2d at 993.

The undersigned concludes that Sims has not shown that his trial counsel was constitutionally ineffective for advising Sims that any plea would require cooperation. The undersigned also concludes that Sims has not shown prejudice with respect to this claim.

The undersigned recommends that the Court deny Sims's motion with respect to ground two.

### C. Ground three: ineffective assistance of trial counsel for failing to object to jury instruction that it did not have to find specific dates

Ground three of Sims's motion alleges that trial counsel was constitutionally ineffective for failing to object to the Court's instruction to the jury that it did not have to find that the offense occurred on specific dates. DN 428 at 2248. Sims argues that the dates in the indictment were elements which the jury needed to find beyond a reasonable doubt under *Alleyne v. United States*, 133 S.Ct. 2151 (2013). DN 431 at 2506 – 17. Sims also relies on *Southern Union Co. v. United States*, 132 S.Ct. 2344 (2012) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See* DN 431 at 2507.

The government argues that Sims's reliance on *Alleyne* is misplaced because the applicable mandatory minimum depended on the amount of drugs the jury found, not the dates of the conspiracy. DN 446 at 2536 – 39. The government argues, "The jury found him guilty of conspiring to traffic five kilograms or more of cocaine (R. 359 Jury Verdict Form), setting a statutory mandatory minimum sentence of twenty years imprisonment due to the 21 U.S.C. [§] 851 enhancement." *Id.* at 2537 – 38 (brackets added).

The undersigned agrees that Sims's reliance on *Alleyne* is misplaced when he argues that the jury should have been required to find specific dates as alleged in the indictment. Likewise,

the undersigned agrees that the applicable mandatory minimum depended on the amount of drugs the jury found beyond a reasonable doubt and the enhancement for Sims's prior felony drug conviction.

      1.   The applicable mandatory minimum depended on
            the drug quantity and Sims's prior felony drug conviction.

The indictment charged Sims with conspiring with the intent to distribute five kilograms or more of cocaine. DN 1 at 1326 (citing 21 U.S.C. §§ 841(b)(1)(A)(ii) & 846). A conviction for that charge carries a ten-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(ii).[4] However, if the person has a prior felony drug conviction, a subsequent conviction carries a twenty-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(ii).[5] The Court

---

[4] The penalty part of the statute says:

    Except as otherwise provided …, any person who violates subsection (a) of this section shall be sentenced as follows:

    (1)(A) In the case of a violation of subsection (a) of this section involving –

          (ii) 5 kilograms or more of a mixture or substance containing a detectable amount of –

             (II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

… *such person shall be sentenced to a term of imprisonment which may not be less than 10 years* or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both.

21 U.S.C. § 841(b)(1)(A) (emphasis added).

[5] The enhanced penalty part of the statute says:

If any person commits such a violation after a prior conviction for a felony drug offense has become final, *such person shall be sentenced to a term of imprisonment which may not be less than 20 years* and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18 or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both.

21 U.S.C. § 841(b)(1)(A) (emphasis added).

14

determines whether a person has a prior conviction that subjects the person to increased punishment.  21 U.S.C. § 851(d).[6]

Before trial, the United States filed a notice of its intent to seek an enhanced sentence for Sims under 21 U.S.C. § 841(b)(1) & 851.  DN 307.  That notice doubled the applicable statutory mandatory minimum, from ten years to twenty years.  21 U.S.C. § 841(b)(1)(A); *United States v. Harris*, 741 F.3d 1245, 1250 (11th Cir. 2014).

The jury found beyond a reasonable doubt that Sims was guilty of conspiring with the intent to distribute five kilograms or more of cocaine.  DN 359.  That finding mandated a ten-year mandatory minimum sentence.  *See* 21 U.S.C. § 841(b)(1)(A)(ii).  The jury was not asked to find whether Sims had a prior drug conviction.  Accordingly, the undersigned concludes that the combination of the amount of drugs the jury found beyond a reasonable doubt Sims conspired to traffic and Sims's prior felony drug conviction triggered Sims's twenty-year mandatory minimum sentence.

2.  <u>Discussion of recent case law</u>

---

[6] The statute says:
(d) **Imposition of sentence**
> (1) If the person files no response to the information, or *if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.*
> (2) If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination.  If no such request is made, the court shall impose sentence as provided by this part.  The person may appeal form an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered.

21 U.S.C. § 851(d) (emphasis added).

Before delving into Sims's arguments regarding the application of *Alleyne* to his sentence, a discussion of the Supreme Court's decisions in *Almendarez-Torres*, *Apprendi*, and *Alleyne* is necessary.  In *Almendarez-Torres*, the petitioner challenged the constitutionality of an immigration statute with a maximum term of two years for unlawful reentry, but a maximum term of twenty years "if the initial deportation was subsequent to a conviction for commission of an aggravated felony."  *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998) (internal quotation marks omitted).  The petitioner argued that the indictment did not allege his earlier aggravated felony convictions, and the district court erred in sentencing him to more than two years.  *Id.* at 227.  The Supreme Court rejected his argument that when a previous offense enhances the potential sentence, a jury must find the element of recidivism beyond a reasonable doubt.  *Id.* at 240.

Two years later, in *Apprendi*, the Supreme Court held,

> *Other than a fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  *With that exception*, we endorse the statement of the rule set forth in the concurring opinions in that case: [I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.  It is equally clear that such facts must be established by proof beyond a reasonable doubt.

530 U.S. at 490 (internal quotation marks omitted) (emphasis added).  The *Apprendi* Court noted that *Almendarez-Torres* "represents at best an exceptional departure from the historic practice" of jury factfinding.  *Id.* at 487.  The Court went on to say that "it is arguable that *Almendarez-Torres* was incorrectly decided" but declined to revisit its validity.  *Id.* at 489.

Where *Apprendi* dealt with statutory maximums, *Alleyne* deals with statutory mandatory minimums.  *Alleyne* held that "any fact that increases the mandatory minimum is an element that must be submitted to the jury."  133 S.Ct. at 2155 (internal quotation marks omitted).  The Court

16

characterized *Almendarez-Torres* as a "narrow exception to the general rule for the fact of a prior conviction" but declined to revisit the holding in *Almendarez-Torres* because the parties did not contest its validity.  *Id.* at 2160 n.1.

Sims has not explicitly argued that his sentence is unconstitutional because the jury was not required to find the fact of a prior conviction.  He does argue that *Alleyne* applies to the "drug quantity attached to mandatory minimums; the corresponding date; and the mandatory minimum triggered under 21 U.S.C. § 851."  DN 431 at 2479.  21 U.S.C. § 851 details the notice the government must provide if it seeks an enhanced sentence, and it requires the Court to determine whether an individual has a prior conviction for which the sentence must be enhanced.  The undersigned concludes that Sims sufficiently raised the argument of whether *Alleyne* applies to require a jury to find the fact of a prior conviction.

The Sixth Circuit has rejected the argument that *Alleyne* overruled *Almendarez-Torres*. *See United States v. Young*, No. 14-6081 *50 (6th Cir. Jan. 26, 2017) (listing cases).  Although "*Almendarez-Torres* may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly overrules it." *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *see also*, *United States v. Harris*, 741 F.3d 1245, 1250 (11th Cir. 2014) (recognizing that "there is some tension between *Almendarez-Torres* on the one hand and *Alleyne* and *Apprendi* on the other.").  Other Courts of Appeal to have addressed the issue have concluded that *Almendarez-Torres* remains binding precedent that must be applied.  *United States v. Wallace*, 759 F.3d 486, 497 (5th Cir. 2014); *United States v. Long*, 748 F.3d 322, 329 (7th Cir. 2014); *United States v. Roberts*, 763 F.3d 947, 950 (8th Cir. 2014).

In accordance with Sixth Circuit precedent, the undersigned concludes that *Almendarez-Torres* remains binding precedent which the Court must apply. Therefore, the undersigned

17

concludes that Sims has not shown that *Alleyne* requires the jury to have found the fact of his prior conviction beyond a reasonable doubt.

### 3.  Whether Sims's counsel was ineffective for failing to object to the jury instruction

The Court turns to Sims's argument that his counsel was ineffective for failing to object to the jury instruction regarding whether the United States had to prove specific dates as alleged in the indictment.  Sims argues that the dates in the indictment were elements that the jury must have found beyond a reasonable doubt.  DN 431 at 2514 (citing *Southern Union Co. v. United States*, 132 S.Ct. 2344 (2012)).

The indictment charged Sims and his co-defendants with conspiracy to traffic cocaine from "on or about and between August 1, 2002, and December 1, 2004."  DN 1.

The Court's instruction said, "The United States does not have to prove with certainty the exact date of the alleged crime.  It is sufficient if the United States proves beyond a reasonable doubt that the crime was committed on the date reasonably near to the date alleged."  DN 399 at 2066.

This kind of "on or about" instruction is preferable when the government alleges a conspiracy because "the proof is often nebulous as to exactly when the crime occurred."  *United States v. Neuroth*, 809 F.2d 339, 342 (6th Cir. 1987) (en banc).  Here, the government alleged that Sims and his co-defendants engaged in a conspiracy that lasted over two years.  The Court's instruction was proper given the nature of a conspiracy allegation.

Sims's reliance on *Southern Union Co.* is misplaced.  In *Southern Union Co.*, the Supreme Court held that *Apprendi* applied to criminal fines.  132 S.Ct. at 2349.  The dates were relevant to the calculation of fines because the person could be fined for each day the person violated the statute.  *See* 132 S.Ct. at 2349.

Here, the jury found that Sims violated 21 U.S.C. § 841(a) when he conspired to traffic cocaine.   Unlike in *Southern Union Co.*, the applicable penalty under that statute does not increase for each day Sims conspired to traffic cocaine.   Rather, as discussed in detail above, the applicable mandatory minimum penalty depended on the amount of cocaine the jury found and Sims's prior felony drug conviction.   *See* 18 U.S.C. § 841(b)(1)(A).

The undersigned concludes that Judah did not provide deficient performance in failing to object to a proper instruction.   Accordingly, the undersigned need not determine whether the failure to object prejudiced Sims.   *See Strickland*, 466 U.S. at 697.

The undersigned recommends that the Court deny Sims's motion with respect to ground three.

### D.  Ground four: ineffective assistance of appellate counsel for ignoring Sims's desire to challenge his sentence based on drug quantity

Ground four of Sims's motion alleges that his appellate counsel, Kent Wicker, was constitutionally ineffective for failing to raise his argument regarding requiring the drug quantity on appeal.   DN 428 at 2249.   In his memorandum, he appears to argue that Wicker was constitutionally ineffective for failing to raise an argument that the jury should have been required to tie specific drug quantities to specific dates.   *See* DN 431 at 2518 ("For example, nowhere in the jury's verdict is there an indication that ten-kilograms of cocaine was being delivered to Sims on 'June 17, 2004.'").

The undersigned has already concluded that Judah's failure to object to a proper instruction was not ineffective.   For the same reason, the undersigned concludes that Wicker's failure to raise an argument regarding a proper instruction was not ineffective.   Accordingly, the undersigned need not determine whether the failure to raise the argument on appeal prejudiced Sims.   *See Strickland*, 466 U.S. at 697.

Similarly, Sims has not shown that Wicker's failure to raise an argument regarding the drug quantity attributed to him by the Court at sentencing was deficient performance.  At the time of Sims's sentencing on October 25, 2011, it was appropriate for the Court to determine a drug quantity applicable to Sims under the Guidelines beyond the drug quantity the jury found beyond a reasonable doubt, as long as the Court appreciated the advisory nature of the Guidelines.  *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006).

Here, the Court demonstrated its appreciation for the advisory nature of the Guidelines in the sentencing hearing because the Court said, "I will find that I have considered the advisory guidelines, the 3553(a) factors."  DN 400 at 2116.  Therefore, Sims has not shown a reasonable probability that arguing about the drug quantity would have changed the result of his appeal.  *See Wilson*, 515 F.3d at 707.

Furthermore, the Sixth Circuit denied Sims's appeal on December 12, 2012.  508 F.App'x at 452.  Even in light of *Alleyne*, decided seven months after Sims's appeal, a district court may calculate a drug quantity higher than the drug quantity the jury found beyond a reasonable doubt.  *See United States v. Joseph*, 604 F.App'x 437, 441 (6th Cir. 2015); *United States v. Nunez*, 567 F.App'x 435, 437 – 38 (6th Cir. 2014).

The undersigned concludes that Wicker's failure to raise an argument regarding the drug quantity on appeal was not ineffective.  Accordingly, the undersigned need not determine whether the failure to raise the drug quantity argument on appeal prejudiced Sims.  *See Strickland*, 466 U.S. at 697.

The undersigned recommends that the Court deny Sims's motion with respect to ground four.

### E.  Ground five: ineffective assistance of trial counsel for failing to move *in limine* to exclude references to the Black Mafia Family (DN 470)

20

The Court granted Sims leave to add an ineffective assistance of counsel claim for his trial attorney's failure to file a motion *in limine* to preclude mention of Sims's membership in the Black Mafia Family at trial.  DN 470 at 2776.  The Court construed this claim of ineffective of assistance of counsel as Sims "alleging that his trial attorney should have filed a motion *in limine* to exclude mention of his alleged membership in the Black Mafia Family at trial."  *Id.* at 2773.

Sims argues that his alleged membership in the Black Mafia Family was "necessary to the question of guilt or innocence" and trial counsel was ineffective for failing to move the Court to preclude introduction of evidence based on his alleged membership.  DN 464 at 2713.  For prejudice, he points to the "significant amount of play" the media gave the Black Mafia Family which "included, but wasn't limited [to], large-scale drug distribution and homicides."  *Id.* at 2712 (brackets added).

Sims has not shown that his trial counsel's failure to move *in limine* to exclude his alleged membership in the Black Mafia Family prejudiced his defense.  Even if the Court had excluded the evidence and instructed the prosecutor not to refer to Sims's alleged membership in the Black Mafia Family, this would not have stopped the press from reporting on "large-scale drug distribution and homicides" attributed to the Black Mafia Family.  By the same token, even if the Court had excluded references to the Black Mafia Family, Sims has not shown that a reasonable probability exists that he would have been acquitted of the drug conspiracy charge.

The undersigned concludes that Sims has not shown that Judah's failure to move *in limine* to exclude references to the Black Mafia Family prejudiced him.  Accordingly, the undersigned need not discuss whether Judah's failure to move *in limine* to exclude references to the Black Mafia Family was deficient performance.  *See Strickland*, 466 U.S. at 697.

21

The undersigned recommends that the Court deny Sims's motion with respect to ground five.

## Conclusions of law as to the remaining motions

### I.      Sims's request for appointed counsel (DN 473)

Sims requests appointed counsel to represent him in these proceedings.  DN 473.  The government asks the Court to deny Sims's request for appointed counsel.  DN 474 at 2807 – 08.

There is no right to counsel in a post-conviction collateral attack.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Kissner v. Palmer*, 826 F.3d 898, 905 (6th Cir. 2016).  The right to counsel extends only to the first appeal of right.  *Finley*, 481 U.S. at 555.

The Court may appoint counsel for a prisoner's post-conviction collateral attack "when the interests of justice so require."  18 U.S.C. § 3006(a)(2)(B).  Whether to appoint counsel is within the Court's discretion.  *Morris v. Dormire*, 217 F.3d 556, 558 (8th Cir. 2000); *see also*, *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993).  The Court considers "the factual and legal complexity of the case, and the petitioner's ability both to investigate and to articulate his claims without court appointed counsel."  *Morris*, 217 F.3d at 558 – 59.

Sims has made numerous *pro se* filings in this case.  *See, e.g.*, DN 431 at 2497 (noting Sims's "voluminous and repetitive" *pro se* filings).  The factual issues are not particularly complex.  Although the legal issues are complex, Sims has articulated his grounds for relief with clear arguments, reasoning, and citations.

The undersigned concludes that the interests of justice do not require the appointment of counsel for Sims in this matter.

The undersigned recommends that the Court deny Sims's request for appointed counsel.

### II.      Sims's motion to amend to add a claim under *Johnson v. United States* (DN 475)

Sims moves to amend his motion to vacate to add a claim for relief under *Johnson v. United States*, 135 S.Ct. 2551 (2015).  DN 475.  The government argues that the *Johnson* claim is time-barred because it does not relate back to his initial motion.  DN 476 at 2819 (citing Fed. R. Civ. P. 15(c) & *Mayle v. Felix*, 125 S.Ct. 2562, 2569 (2005)).  The government also argues that the Court should deny the proposed amendment because Sims's proposed claim under *Johnson* lacks merit.  DN 476 at 2819.

The undersigned disagrees with the government that Sims's motion is time-barred because it does not relate back to his original motion to vacate.  The Supreme Court decided *Johnson* on June 26, 2015, over a year after Sims filed his original motion to vacate on April 14, 2014.  Sims could not have relied on *Johnson* when he filed his original motion to vacate.  For the same reason, requiring Sims to show that his *Johnson* claim relates to the same "common core of operative facts" as alleged in the initial motion, when he could not have known the basis for the *Johnson* claim at the time of the original motion, stretches the relation-back requirement too far.  Accordingly, the undersigned concludes that the relation-back requirement does not apply to his proposed *Johnson* claim.

The Court may deny leave to amend if the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment is futile "if the amendment could not withstand a Rule 12(b)(6) motion to dismiss" for failure to state a claim.  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act's violent felony definition was void for vagueness.  *Id.* at 2563.  *Johnson* announced a substantive rule with retroactive effect on collateral review.  *Welch v. United States*, 136 S.Ct. 1257, 1268 (2016).

23

Here, Sims appears to argue that his conviction for conspiring to traffic cocaine violates his right to due process under *Johnson* because the definition of drug trafficking under which he was convicted is unconstitutionally vague.  *See* DN 475 at 2812 – 14.  Unlike in *Johnson*, Sims was not subject to an increased sentence under the Armed Career Criminal Act, much less its unconstitutional residual clause.[7]   Rather, as discussed in detail above, his prior felony conviction and the jury's finding of drug quantity determined the twenty-year mandatory minimum sentence.

Even assuming that *Johnson*'s reasoning applies here, the cocaine trafficking statute under which the jury convicted Sims was not unconstitutionally vague.  The statute prohibits conspiring to possess cocaine with the intent to distribute.  21 U.S.C. §§ 841(a)(1) & 846.  The statute delineates the mandatory minimum sentences that correspond to certain drug quantities.  *See, e.g., id.* § 841(b)(1)(A)(ii)((II).  Therefore, the statute provides fair notice and does not invite arbitrary enforcement by judges.  *See Johnson*, 135 S.Ct. at 2557.

Accordingly, the undersigned concludes that Sims's proposed amended claim under *Johnson* would be futile.  Therefore, the undersigned concludes that the Court should deny Sims's motion to add a claim under *Johnson*.

### III.     Sims's motion to amend to add a claim under *Elonis v. United States* (DN 477); Sims's motion for extension of time (DN 479); government's first motion to strike (DN 480); Sims's reply (DN 481); government's second motion to strike (DN 482); Sim's response to government's second motion to strike (DN 483)

On October 7, 2016, Sims moved to amend his motion to vacate to add a claim under *Elonis v. United States*, 135 S.Ct. 2001 (2015).  DN 477.  The government argues that the *Elonis*

---

[7]  Nor was Sims subject to an increased guideline range under U.S.S.G. § 4B.1.2 due to the same language ruled unconstitutional in *Johnson*.  *See Beckles v. United States*, *cert. granted,* 136 S.Ct. 2610 (U.S. Mar. 9, 2016) (15-8544); *see also*, Pet. Writ. Cert. (Mar. 9, 2016), http://www.scotusblog.com/case-files/cases/beckles-v-united-states/.

claim is time-barred because it does not relate back to his initial motion.  DN 478 at 2827 (citing Fed. R. Civ. P. 15(c) & *Mayle*, 125 S.Ct. at 2569).  The government also argues that the Court should deny the proposed amendment because Sims's proposed claim under *Elonis* lacks merit. *Id.* at 2827 – 28.

On November 7, 2016, Sims filed a "request for admission."  DN 479.  The Court construes the motion as a request for an extension of time to file a brief in support of his *Elonis* claim because he sought "an extension of time up to [and including] November 14, 2016," to fully address the *Elonis* claim.  *Id.* at 2831.

The government moves to strike DN 479 as untimely.  DN 480.

On November 21, 2016, Sims filed a counterclaim and crossclaim.  DN 481.  The Court construes this filing as a reply in support of his motion for extension of time on the *Elonis* claim.

In response, the government moves to strike DN 481 as untimely.  DN 482.

Sims filed an "answer and reply" to the government's second motion to strike.  DN 483. The Court construes this filing as a response to the government's second motion to strike.

Similar to his *Johnson* claim, Sims could not have known the basis for a claim under *Elonis* when he filed his motion to vacate.  Accordingly, the undersigned concludes that the relation-back requirement does not preclude the proposed *Elonis* claim.

In *Elonis*, the Supreme Court addressed the Elonis's conviction for transmitting a "communication containing any threat … to injure the person of another." 135 S.Ct. at 2004 (quoting 18 U.S.C. § 875(c)).  The Supreme Court addressed whether "the jury should have been required to find that he intended his posts to be threats."  *Id.* at 2007.  The Supreme Court held that the court's instruction that the government "need prove only that a reasonable person would regard Elonis's communications as threats," was in error.  *Id.* at 2012.

25

Sims appears to argue that the Court's jury instructions violated his rights under *Elonis* because the instructions did not require the government to prove that he conspired to possess with the intent to distribute cocaine.  *See* DN 477 at 2823.

To the contrary, the Court's instructions did require the government to prove Sims's intent beyond a reasonable doubt:

> For you to find either of the defendants guilty of the conspiracy charged, *the United States must prove each and every one of the following elements beyond a reasonable doubt as to that defendant*:
>
> First, that two or more persons conspired or agreed to distribute or possess with the intent to distribute cocaine; and second, that the defendant knowingly and voluntarily joined the conspiracy.  …
>
> With regard to the second element, the defendant's connection to the conspiracy, the United States must prove that the defendant *knowingly and voluntarily* joined that agreement.  The United States must prove that the *defendant knew the conspiracy's main purpose and voluntarily joined* the conspiracy intending to help or achieve its goals.  You must consider each defendant separately in determining whether either or both of them *knowingly and voluntarily* joined the conspiracy.

DN 399 at 2062 (emphasis added).

Here, Sims's proposed *Elonis* claim is futile because it would not survive a motion to dismiss for failure to state a claim.  Sims has not shown that *Elonis*, a case about the intent required for communicating interstate threats, could provide him with any relief for his drug conspiracy conviction.  Likewise, Sims has not shown that the Court's jury instructions, which instructed the jury on finding intent, violated his rights under the intent principles in *Elonis*.

Accordingly, the undersigned concludes that Sims's proposed amended claim under *Elonis* would be futile.  Therefore, the undersigned concludes that the Court should deny Sims's motion to add a claim under *Elonis*.

The undersigned recommends that the Court deny Sims's remaining motions as moot. The undersigned recommends that the Court deny the government's motions to strike as moot.

## Recommendation

The undersigned recommends that the Court **DENY** Sims's motion to vacate on all four grounds raised in DN 428 & 445.  The undersigned recommends that the Court **DENY** Sims's motion to vacate on the ground raised in DN 470.

The undersigned recommends that the Court **DENY** Sims's request for appointed counsel.  The undersigned recommends that the Court **DENY** Sims's motion to amend to add a claim under *Johnson* as requested in DN 475.  The undersigned recommends that the Court **DENY** Sims's motion to amend to add a claim under *Elonis* as requested in DN 477.

The undersigned recommends that the Court **DENY as moot** Sims's motion for extension of time as requested in DN 479.  The undersigned recommends that the Court **DENY as moot** the government's first motion to strike as requested in DN 480.  The undersigned recommends that the Court **DENY as moot** Sims's counterclaim and crossclaim as alleged in DN 481.  The undersigned recommends that the Court **DENY as moot** the government's second motion to strike as requested in DN 482.

The undersigned recommends that the Court **DISMISS** this case, **with prejudice**.

## Notice

Under 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge files these findings and recommendations with the Court.  A copy shall be electronically transmitted to all parties. 28 U.S.C. § 636(b)(1)(C).  If a party objects to these findings and recommendation, that party has fourteen days to file an objection. *Id.*; Fed. R. Civ. P. 72(b)(2).

Failure to timely object to these findings and recommendations constitutes a waiver of a party's right to appeal. *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also,*

*Thomas v. Arn*, 474 U.S. 140 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.  Fed. R. Civ. P. 72(b)(2).