UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**TOREE SIMS**                                                      **PETITIONER**

vs.                                          **CRIMINAL ACTION NO. 3:05CR-121-CRS**
                                               **CIVIL ACTION NO. 3:14CV-316-CRS**

**UNITED STATES OF AMERICA**                          **RESPONDENT**

## MEMORANDUM OPINION

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge (the "Report")(DN 486) and objections filed thereto (DN 490). For the reasons set forth herein, the objections of the petitioner, Toree Sims, will be rejected and the Report will be accepted and adopted in its entirety.

I. Background

For the sake of continuity, the court will refer to the United States Magistrate Judge's recitation of the factual and procedural history of the case contained in his Report and will recite verbatim from it here:[1]

**I. Background**

The court of appeals described the background in this matter as follows:

---

[1] The magistrate judge took the background facts from the United States Court of Appeals' decision affirming Sims' conviction. Sims has not objected to the factual or procedural history, as recited in the Report.

> Detroit Drug Enforcement Agency ("DEA") agents began investigating a group known as the Black Mafia Family in November 2003. In May 2004, a judge authorized the DEA to intercept phone calls to and from Terry Flenory, who was believed to be the head of the Black Mafia Family. Agents intercepted multiple calls concerning the sale and distribution of cocaine between Flenory and a man suspected to be Sims. On June 17, 2004, a driver for the organization was stopped by police on his way to Louisville. During a search of the vehicle, the police recovered ten kilograms of cocaine and a cell phone with a record of a recent call to "Qiana Toree." The phone number listed for ["Qiana Toree"] was the same number used by the man believed to be Sims whose calls with Flenory had been intercepted by the DEA. The Detroit DEA notified the Louisville DEA about both the calls and the stop, and, as a result, Louisville DEA agents applied for court authority for a wiretap of the cell phone Sims used in the calls with Flenory.
>
> The June 28, 2004, affidavit for the wiretap detailed the Detroit investigation and how that investigation had intercepted Sims's conversations with Flenory. It also discussed how a confidential source, SOI-9, told DEA agents he had bought cocaine from Sims in late 2003. A judge in the Western District of Kentucky issued an order authorizing the tap, and on July 30, this same judge ordered the tap to be extended an additional thirty days. Numerous calls concerning the sale and distribution of cocaine were intercepted, leading to a search of the home of Karen Johnson, Sims's girlfriend, where scales and drug ledgers were found, along with Black Mafia insignia. A grand jury indicted Sims on violations of 21 U.S.C. §§ 846 and 841(a)(1). Sims moved to suppress the evidence gathered with the wiretap and to compel the government to provide him with an unredacted copy of a wiretap affidavit from a different case. Both motions were denied, and following a jury trial, Sims was convicted. Sims timely appealed the denial of these motions.

*United States v. Sims*, 508 F.App'x 452, 455 (6th Cir. 2012) (brackets added). Before trial, the United States filed a notice of its intent to seek an enhanced sentence for Sims under 21 U.S.C. § 841(b)(1) & 851 for his prior felony drug conviction. DN 307.

At sentencing, the Court found that Sims's criminal history was a category III and his offense level was 40. Sent'g Tr. 43. The Court sentenced Sims to 360 months, at the lowest end of the then-applicable guideline range. *Id.*

On appeal, Sims alleged:

> four errors in the district court's denial of his motion to suppress the wiretap: (1) the June 28 affidavit in support of the wiretap made an insufficient showing of necessity; (2) inconsistencies in this affidavit merited an evidentiary hearing; (3)

this affidavit failed to establish probable cause; and (4) the July 30 affidavit in support of the extension of the wiretap failed to establish probable cause.

508 F.App'x at 456.

The Court of Appeals found no clear error in the district court's finding of necessity; denial of Sims's request for an evidentiary hearing; in finding that probable cause existed for the initial wiretap; and in finding that probable cause existed for extending the wiretap. *Id.* at 457 – 60. The Court of Appeals also found no abuse of discretion in the district court's refusal to enter an order compelling the government to provide an unredacted affidavit submitted in a different criminal matter. *Id.* at 460 – 61.

**II. Post-conviction procedural history**

On April 14, 2014, Sims filed this motion to vacate. DN 428. He has made numerous other filings since then. Notably, he successfully moved for a sentence reduction. *See* DN 466. On February 11, 2015, the Court reduced Sims's sentence from 360 months to 292 months. *Id.*

In a May 13, 2015 memorandum opinion, the undersigned detailed the lengthy post-conviction procedural history in this case. DN 470 at 2767 – 68. The undersigned will not repeat that lengthy procedural history here. The following motions are ripe for review:

- o DN 428: Sims's motion to vacate his conviction under 28 U.S.C. § 2255;

- o DN 470: Sims's additional ground for relief;

- o DN 473: Sims's motion for appointed counsel (styled as a "response" to the Court's order granting the motion to amend);

- o DN 475: Sims's motion to amend his motion to vacate to add a claim under *Johnson v. United States*, 135 S.Ct. 2551 (2015);

- o DN 477: Sims's motion to amend his motion to vacate to add a claim under *Elonis v. United States*, 136 S.Ct. 2001 (2015);

- o DN 479: Sims's motion for extension of time (styled as a "request for admission");

3

- DN 480: government's first motion to strike;

- DN 481: Sims's reply in support of his motion for extension of time (styled as "counterclaim and crossclaim");

- DN 482: government's second motion to strike; and

- DN 483: Sims's response to government's second motion to strike.

MJ Report, DN 486, pp. 1-2.

## II. Analysis

The Court having referred the motion to vacate conviction (the "petition") and accompanying motions to the United States Magistrate, the Report (DN 486) recommended that the Court:

1. Deny Sims' motion to vacate on all four grounds raised.

2. Deny Sims' request for appointment of counsel.

3. Deny Sims' motion to amend to add a claim under *Johnson.*

4. Deny Sims' motion to ament to add a claim under *Elonis*.

5. Deny as moot both of the United States' motions to strike.

6. Deny as moot Sims' proposed "counterclaim" and "crossclaim."

7. Dismiss the action with prejudice.

DN 486, p. 27.

In his lengthy, detailed, and well-written Report, the magistrate judge addressed each of Sims' challenges and explained the bases for concluding that Sims' had not met the two-pronged *Strickland* standard--to show that his trial and/or appellate counsel's performance was deficient and that counsel's errors were so serious that he was denied a fair trial. *Strickland v. Washington*,

466 U.S. 668, 686-87 (1984). For the reasons thoroughly explained in the Report, Sims motion to vacate will be denied.

Sims filed objections to the Report in accordance with Fed.R.Civ.P. 72(b)(2). The court has conducted a *de novo* review of those portions of the report to which Sims has objected, along with corresponding portions of the record, and concludes that the magistrate judge's findings and conclusions contain no error.

Sims has not offered any ground for rejecting the Report other than to disagree with the magistrate judge's conclusions that Sims' arguments were without merit. Sims objections rehash those arguments made in his petition, and embellish them, in an attempt to overcome the recommendation of dismissal. Sims' objections are neither factually nor legally well-grounded.

Sims continues to urge that various cases such as *Johnson v. United States*, 135 S.Ct. 2551 (2015) and *Elonis v. United States*, 135 S.Ct. 2001 (2015), which do not apply to the case at bar, be applied by this Court by suggesting that the court draw legally untenable analogies.

For example, despite the magistrate judge having noted that Sims was not sentenced under the Armed Career Criminal Act and having found that *Johnson* therefore could not apply to Sims' sentencing, Sims objects that "nothing within Johnson's holding reference such statutory design and or pertinent legislative history as not shedding light on other statutes congressional intent, notwithstanding, a different statutes language…" DN 490, p. 10. The *Johnson* case applies to defendants sentenced under the residual clause of the ACCA. Its holding cannot be used to mount an attack on the drug trafficking statutes, despite Sims' desire to do so. The magistrate judge correctly found that the addition of Sims' proposed claim under *Johnson* would be futile, and recommended that Sims' motion to add it be denied. We will follow this recommendation.

The magistrate judge found that the court should also deny Sims' request to add a claim that the jury instructions violated his rights under *Elonis*, a case addressing the intent required for interstate communication of threats. The magistrate judge correctly noted that the court gave a proper instruction which required the United States to prove and the jury to find beyond a reasonable doubt that Sims' knowingly and voluntarily joined in the drug trafficking conspiracy, intending to help or achieve its goals. Undeterred, Sims objects, stating that "*Elonis*, now gleans 'wrongdoing must be conscious to be criminal,'" and refers to cases concerning lesser included offense instructions. He then concludes that "What is clear, at least, in this case, is the court's instructions converted the General Intent to a Specific Intent and lead the jury into a quagmire that movant finds Elonis to correct." *Id.* at 13-14. This objection does not illuminate any deficiency in the jury instructions in light of *Elonis*. The magistrate judge correctly found that the addition of this claim would also be futile.

Similarly, despite the magistrate judge's complete and accurate explanation of the current law regarding drug quantity jury findings and instructions as well as an explanation why *Southern Union Co. v. United States*, 132 S.Ct. 2344 (2012), a case cited by Sims, is inapposite, Sims persists in urging that *Southern Union Co.* applies. He contends that a jury must find the exact dates upon which various quantities of drugs were attributable to him during the period of the drug trafficking conspiracy for purposes of determining the appropriate guideline range. He urges this is so because *Southern Union*, a case admittedly about the imposition of fines imposed upon a company for each day of noncompliance under the Resource Conservation and Preservation Act of 1976, is, in any event, "somewhat similar" and "which is the same equivalent as a fines because the more drug was known on each date, the more drug quantity had 'increased', which shows Petitioner was 'fined' for each day he violated 841 and 846 statue [sic] that increased his offense level under

6

3D1.1…" DN 490, pp. 6-7. This objection is clearly meritless. The court will accept and adopt the Report's conclusion that Sims has not shown that trial counsel was deficient for failing to object and seek a jury instruction requiring a finding beyond a reasonable doubt of exact dates specific quantities of drugs were attributable to him.

The magistrate judge also found no deficiency in the performance of appellate counsel Kent Wicker based upon the same law and same reasoning concerning the complete and correct instruction regarding the establishment of drug quantity. Sims' objections state nothing new in this regard. The court will accept and adopt the Report's conclusion that Sims failed to show that appellate counsel was deficient for failing to raise the argument as to the purported error in the instructions.

Further, in his objections, Sims adds scenarios which are completely ungrounded in fact. For example, the magistrate judge considered Sims' argument that counselor Judah's performance was deficient because he told Sims that any plea would require his cooperation with the United States, and thereby caused Sims to forego the opportunity to plead guilty. The magistrate judge found that the sworn statements of attorneys Judah and Farra that "all types of pleas were discussed" and that in each meeting Sims "made it absolutely clear that he would not settle the case." DN 486, p. 11. The United States provided a letter documenting a plea offer which indicates that Sims was not required to cooperate, but that any plea which did not include cooperation would result in a recommendation of an enhanced mandatory minimum sentence of twenty years. *Id.* Judah avers that he conveyed this offer to Sims. *Id.*

The magistrate judge found the affidavits of Judah and Farra credible, as their statements are consistent with the fact that Sims has consistently maintained his innocence, even in the most recent pleadings. The magistrate judge found Judah's statement credible that he explained the

7

option of entering an "open plea" but that the twenty-year enhanced mandatory minimum would be recommended. The magistrate judge further concluded that even if Judah had not presented Sims with the "open plea" option, Sims could not establish that "the outcome of the plea process would have been different with competent advice," quoting *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). He reasoned that if Sims entered a plea in open court he could have received credit for acceptance of responsibility, but there is no entitlement to a section 3E1.1 reduction simply by entry of a plea. The magistrate judge noted further that with an open plea and a reduction for acceptance of responsibility, Sims still could have received the same 360-month sentence the court imposed, at a reduced offense level of 38 and a criminal history at a category III. The resulting guideline range would have been 292-365 months. U.S.S.G. Ch. 5, pt. A. MJ Report, DN 486, p. 12. The Report thus correctly concluded that Sims failed to show that his trial counsel was ineffective for advising him that any plea would require cooperation, and Sims had not shown prejudice with respect to this claim. *Id.* at 13.

In his objections Sims postulates that he could have received a significant reduction in sentence had he been informed about a "global plea," stating that "Counsel could have agreed with USA not to file 851 enhancement based on the Petitioner convincing other defendants to plea at an early stage and not going to trial. Also, there could have been an additional decrease in sentence based on other 3553(a) factors." DN 490, p. 5. Fantastic scenarios concerning what "might have been" under facts which are either nonexistent or at odds with the actual facts in the case are wholly insufficient to meet the *Strickland* standard. The court will uphold the Report's rejection of Sim's claim of prejudice during the plea negotiation process.

The magistrate judge concluded that Sims failed to establish that Judah's performance was deficient when he purportedly (1) failed to investigate the prior testimony of witnesses Boyd and

Parson, (2) failed to utilize the affidavits of agents Wenther and Bester to impeach witnesses Boyd, Parson, and Dunn's testimony at trial that the shipment of cocaine was going to Louisville, and (3) failed to move *in limine* to preclude references to Sims' membership in the Black Mafia Family.

Sims claimed that Boyd and Parson's testimony was untrustworthy because they had provided testimony in other cases in cooperation with the United States and that both had received deals for significantly reduced sentences in exchange for their testimony. The magistrate judge noted that just such impeaching evidence was adduced by Judah on cross-examination of these witnesses. Further, Judah cross-examined Boyd, Parson, and Dunn concerning the shipment of cocaine and introduced the defendant's theory that the shipment was going to Atlanta rather than Louisville. The magistrate judge further reasoned that the affidavits of Wenther and Bester could not be used by Judah in his cross-examination, as the Federal Rules only permit the use of a witness' prior inconsistent statement to impeach *that* witness's testimony, not the testimony of another witness. Fed.R.Evid. 613.

The magistrate judge noted that Judah had attempted to impeach Parson on a point by using Dunn's statement, but was precluded by the court from doing so. In any event, the magistrate judge concluded that the intended purpose of the proposed introduction of the Wenther and Bester affidavits—suggesting to the jury that the cocaine shipment was headed for Atlanta rather than Louisville--was achieved on cross-examination without employment of the affidavits themselves. Additionally, Judah brought out on cross-examination the fact that Parson and Boyd had testified in other cases and had received much in exchange for their testimony. Thus the magistrate judge properly concluded that Judah's performance was not deficient either in investigating or in cross-examining witnesses at trial.

In his objections, Sims simply states that the magistrate judge "do not have a crystal ball and do not know precisely what district court would allow because both Agents sworn affidavits are much stronger and convincing evidence than Agent Dunn's statement per se." DN 490, p. 4. While the magistrate judge does not have a crystal ball, he does have a sound and reasoned basis for believing that the district court would not have permitted Judah to cross-examine with the Wenther and Bester affidavits. First, the Federal Rules of Evidence speak clearly to this very point. Such proposed cross-examination is not permitted, the strength of any particular affidavit notwithstanding. It is the nature of the evidence, not its strength, to which the rules speak. Additionally, Judah did, in fact, attempt to utilize the Dunn affidavit to challenge Parson's testimony, but to no avail. Thus there has been no showing by Sims that his counsel's performance was deficient, and the Report's conclusion on this point will be accepted and adopted.

Sims also contended that had Judah investigated Boyd and Parson's testimony at other proceedings, it would have revealed that the prosecutor committed misconduct when she referred to Sims as a member of the Black Mafia Family. In conjunction with this argument, Sims also asserts that Judah's performance was deficient in that he failed to move *in limine* to preclude reference to his alleged membership in the Black Mafia Family. The magistrate judge considered Sims' argument that the United States engaged in prosecutorial misconduct in referring to him as a member of the Black Mafia Family, that he was prejudiced by the "significant amount of play" given by the media which Sims stated "included but wasn't limited [to] large-scale drug distribution and homicides." DN 486, p. 21. Sims urged that Judah should have moved to exclude his alleged membership, and failure to do so prejudiced his defense.

The magistrate judge found that even if the court had instructed the prosecutor not to refer to Sims' alleged membership, the press would still have reported on "large-scale drug distribution

and homicides" attributable to the Black Mafia Family. Whether member or not, the evidence in this case connected Sims to the individuals who were members, and thus themselves purportedly affiliated with large-scale drug operations and homicides. Sims has not shown that the proof of his affiliation with Flenory and others would have been impacted, regardless of the mention of alleged "membership." Further, Sims has not shown any likelihood that a *limine* motion would have been successful in the face of evidence seized from Sims' girlfriend's home including scales, drug ledgers, a design for a piece of jewelry with the Black Mafia insignia seized from Sims' home, the testimony of witnesses that Sims was a member, and numerous intercepted phone calls between Sims and members of the Black Mafia Family. This court agrees with the Report's conclusions rejecting the claim of prosecutorial misconduct in light of the evidence supporting the statement, rejecting Sims' contention that the failure of his counsel to move *in limine* to exclude evidence prejudiced his defense, and that Sims offered no evidence that, had the court excluded reference to his alleged membership in the Black Mafia Family, he would have been acquitted of the drug conspiracy charge. DN 486, p. 21.

Sims urges in his objections that there was a reasonable probability that if counsel had "objected and filed a Motion to Change Venue, this could have prevented mass reporting from the press, if not all depending on the location." DN 490, p. 7. Further, he states that "because jurors not knowing he was affiliated with (BMF) Based on the Petitioner not taking the stand, jurors reasonably could have assumed Petitioner was a 'law abiding citizen' with no 'criminal history' or has no ties with any gangs and violent organization as (BMF)."

First, Sims recites no grounds whatsoever to support a change of venue in this case. In any event, a change of venue does nothing to prevent the press from reporting on cases deemed newsworthy. Sims would not have been able, through a *limine* motion or a change of venue, to

11

cleanse the evidence in the case of all references to the Black Mafia Family, as that evidence was part of the *res gestae* of the case. Similarly, Sims would have been unable to distance himself from the evidence connecting him to those who were identified as members of the Black Mafia Family and the extensive, large-scale drug distribution network. In the face of overwhelming evidence against him, Sims' assertion that jurors could reasonably have assumed that he was a "law abiding citizen" with no ties to any gangs rings hollow. Sims has clearly failed to establish prosecutorial misconduct, deficient performance by counsel, or prejudice with respect to this issue. The court reaffirms the Report's rejection of these arguments.

In accordance with this opinion, the court will accept and adopt the magistrate judge's Report, deny Sims' motion to vacate on all grounds raised (DNs 428 and 445), deny Sims' request for appointment of counsel (DN 473), and deny his motions for leave to amend to add a *Johnson* claim (DN 475) and an *Elonis* claim (DN 477). We will also affirm the magistrate judge's determination that the United States' two motions to strike (DNs 480 and 482) and Sims' so-called "Motion for Request for Admission" (DN 479) and "Counterclaim and Crossclaim" (DN 481) be denied as moot. Sims' recently filed "Motion for Summary Judgment" (DN 494) and "Motion Requesting District Court to Rule on 2255 Motion (DN 496) will also be denied as moot. A separate order and final judgment will be entered this date in accordance with this opinion.

Finally, before seeking an appeal, a habeas petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253. This does not require a showing that the appeal will succeed. *Slack v. McDaniel*, 529 U.S. 473 (2000). Rather, the petitioner must show that reasonable jurists could find debatable whether the petition should be resolved in a different manner or that the matter deserves further review. *Miller-El v. Cockrell*, 537 U.S. 322 (2003). This court concludes that no reasonable jurist could find debatable the conclusion that the claims

in this petition fail in the merits. Therefore, a certificate of appealability will not issue in this matter.

September 16, 2018

**IT IS SO ORDERED.**

**Charles R. Simpson III, Senior Judge
United States District Court**

cc: Counsel of Record
Petitioner Toree Sims, *pro se*